Lookout Volunteer Fire Company, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Charles W. Savercool, Respondents.

Argued June 2, 1980, before Judges WILKINSON, JR., MACPHAIL and WILLIAMS, JR., sitting as a panel of three.

*William M. Thomas*, with him *John P. Thomas, Wilbur C. Creveling, Jr.* and *David L. White, Thomas & Hair*, for petitioner.

*Renald S. Baratta*, for respondents.

OPINION BY JUDGE MACPHAIL, August 21, 1980:

Lookout Volunteer Fire Company (Employer) has appealed from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's award of benefits to Charles W. Savercool (Claimant) for total disability resulting from a heart attack that occurred on January 10, 1972 while Claimant was present at the fire company. We reverse.

The Claimant filed a claim for benefits under The Pennsylvania Occupational Disease Act, Act of June 21, 1939, P.L. 566, *as amended,* 77 P.S. §1201 et seq. on February 4, 1972. The claim alleged that the occupation of volunteer fireman had caused Claimant who was then 32 years old to suffer from heart disease. Both the Employer and the Commonwealth filed answers to the claim.[1]

The referee held hearings in this matter on September 13, 1972 and March 20, 1973. At the second hearing, a stipulation dismissing the claim against the Employer was noted. The Commonwealth stated on record that it would not oppose the claim for benefits and the referee stated that an order would be entered against the Commonwealth.

The next activity of record is a hearing on November 26, 1973 at which the Commonwealth moved for dismissal of the claim for failure to prosecute.[2] This motion was held in abeyance by the referee. The Employer was not notified of this hearing.

On January 10, 1974 the final hearing was held, also without notice to the Employer. Claimant presented his medical testimony and moved to amend the claim under the Occupational Disease Act to proceed under The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1 et seq.

On January 28, 1974, the referee dismissed the claim for benefits under the Occupational Disease Act and denied the Claimant's motion to amend.

The Claimant filed an appeal to the Board alleging that his original filing under the Occupational Disease

---

[1] The Commonwealth was involved as a party in the claim under the Occupational Disease Act, but would not be liable on the claim under the Workmen's Compensation Act.

[2] The record shows that six hearings had been scheduled which Claimant's counsel did not attend.

Act was caused by compensation officials who had supplied the wrong forms. The Board remanded the matter for a hearing on the timeliness of Claimant's motion to amend. The case was referred to a different referee.

The referee conducted a hearing on the timeliness of the motion to amend on May 29, 1975[3] and entered his decision on December 13, 1976.

The referee found that Claimant's motion to amend was timely and that Claimant was entitled to benefits under the unusual strain doctrine. The Board affirmed the referee.

The Employer raises the following issues for our review: (1) whether there is substantial evidence to support the referee's finding of unusual strain; (2) whether the referee erred in granting Claimant's motion to amend; and (3) whether the Employer has been deprived of due process because the Board entered its opinion and order before Employer had filed a brief.

Where, as here, the party having the burden of proof succeeds below, our review is to determine whether constitutional rights were violated, errors of law committed, or a necessary finding of fact is not supported by substantial evidence. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board*, 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977).

In the instant case, the Claimant, a diabetic, testified that he reported to the fire engine house on January 10, 1972 for the weekly drill. On that date the drill consisted of merely driving to an alarm box, turning

---

[3] The transcript of this hearing is not in the record, but the referee states that only evidence on the timeliness issue was presented. No new evidence on the merits was produced. We do not deem this transcript necessary for our review because of our resolution on the merits.

in an alarm and returning to the engine house. Following the drill, the Claimant left the engine house to deliver his car for repair at a nearby garage. He had just arrived at the garage when he heard the fire alarm sound; he proceeded back to the engine house, parked his car, and ran about 75 feet inside to the fire truck. He learned that the call had been a false alarm and he immediately returned to his car, delivered it to the garage and returned to the engine house in a car loaned to him by the garage. The Claimant remained at the fire station for approximately forty-five minutes at which time he began to experience discomfort. He asked for and received permission to return home. On January 12, 1972, Claimant reported to the emergency room of the hospital and was admitted to the intensive care unit when it was determined that he had suffered a myocardial infarction.

The Claimant presented the testimony of his treating physician. No testimony was presented by the Employer.

The referee found, inter alia

6. That the myocardial infarction stated in Finding of Fact #5 is related to the exertion of rushing off to a fire call on January 10, 1972. Further, that it is infers [sic] from the testimony of the Claimant's medical expert that such exertion took placed [sic] when the Claimant ran 75 feet from his car to the fire station on January 10, 1972.

The referee concluded that the heart attack was a compensable accident under the unusual strain doctrine.[4]

Under the unusual strain doctrine, Claimant cannot recover unless he proves that the heart attack resulted

---

[4] Because Claimant's injury occurred prior to the effective date of the 1972 amendments to the Workmen's Compensation Act, he was subject to the accident requirement of the pre-1972 Act. *Lewis v. Workmen's Compensation Appeal Board*, 43 Pa. Commonwealth Ct. 70, 401 A.2d 863 (1979).

from over-exertion or unusual strain encountered in the course of his employment. This doctrine is to be applied to the work history of a particular claimant, *i.e.* what is unusual for this particular fireman and not what is unusual for firemen in general. *Hamilton v. Procon, Inc.,* 434 Pa. 90, 252 A.2d 601 (1969).

The demands inherent in the profession of fire-fighting prompted some leniency in the application of the unusual strain doctrine. An approach developed recognizing that rules enunciated in regard to stable, usual, regular, and continued occupations should not be applied to an inherently irregular, intermittent, and unusual employment such as firefighting. *Foster v. State College Borough,* 124 Pa. Superior Ct. 492, 189 A. 786 (1937). However, it should be noted that, in *Foster,* the Board made findings that the decedent had over-exerted himself at the fire in question. The lower court reversed the Board and held that what the decedent had done at the fire was "natural exertion incident to discharging his usual duties." *Id.* at 495, 189 A. at 787. The Superior Court enunciated the more lenient rule in light of the Board's findings. *See also, Mosser v. Borough of Mount Union,* 158 Pa. Superior Ct. 277, 44 A.2d 762 (1945).

In the instant case there is no evidence that running 75 feet was unusual for this Claimant. There is no evidence that Claimant was over-exerted in any sense. He did not testify that he was out of breath or felt tired after the run. Indeed, thereafter he proceeded without incident or discomfort to deliver his car to the garage. There is simply no evidence in the record that the 75 foot run was unusual or that it caused unusual strain to the Claimant.

The Claimant's physician testified that when he saw Claimant in the Easton Hospital two days after the incident of January 10, he diagnosed Claimant's condition as an acute inferior wall myocardial infarc-

tion. From the history given to him by the Claimant, the physician testified that in his opinion the infarction was totally unrelated to Claimant's diabetic condition and was caused by "... exertion. Getting up suddenly, rushing out and putting that heart under that type of stress." While such testimony is sufficient to prove causation, it falls short of meeting Claimant's burden of proving "over-exertion" or "unusual strain." Moreover, Claimant did not testify that he "got up suddenly" or that he "rushed out." His testimony was, "Me, I did not do anything other than returning; I drove the car back, got out of the car, and ran into the building." Where an expert opinion is contrary to the established facts or is based on assumptions not in the record, it is valueless. *Miller v. Springfield Township Highway Department,* 202 Pa. Superior Ct. 616, 198 A.2d 399 (1964).

It is clear that the record does not contain relevant evidence that a reasonable mind might consider adequate to support the conclusion that Claimant experienced unusual strain on January 10, 1972 and there is no competent evidence that the 75 foot run caused Claimant's heart attack. We are well aware that the referee is the fact finder and that questions of credibility and weight of the evidence are for the fact finder to determine, *American Refrigerator, supra,* but whether there is substantial evidence to support the findings of fact is subject to our review. *City of Hazleton v. Workmen's Compensation Appeal Board,* 35 Pa. Commonwealth Ct. 477, 386 A.2d 1067 (1978). We find no evidence of unusual exertion or strain on the record and hold the referee's conclusion of law to be error.

Our resolution of this issue makes it unnecessary for us to reach the other issues raised by the Employer.

Judge WILLIAMS, JR. dissents.

## ORDER

AND Now, this 21st day of August, 1980, the order of the Workmen's Compensation Appeal Board, dated September 22, 1977, affirming the order of the referee, dated December 20, 1976, awarding benefits to Charles W. Savercool is hereby reversed and the case is dismissed.